1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BRENDA ALLEN,**<br><br>                    **Plaintiff,**<br><br>     **v.**<br><br>**JEANNE WOODFORD; RICHARD RIMMER; ROSANNE CAMPBELL; GWENDOLYN MITCHELL; SAMPATH SURYADEVARA, M.D.; JUAN JOSE TUR, M.D.; MUHAMMAD ANWAR, M.D.; MADERA COMMUNITY HOSPITAL, a California Corporation,**<br><br>                    **Defendants.** | **1:05-CV-01104-OWW-LJO**<br>**1:05-CV-01282-OWW-WMW**<br><br><br>**MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO CONSOLIDATE; DENYING DEFENDANTS' MOTION TO SEVER** |
| **GENEA SCOTT, REGINA BOYCE, AND JULIE HOLMES**<br><br>                    **Plaintiffs,**<br><br>     **v.**<br><br>**RODERICK HICKMAN; FRENCHIE SELLF; JEANNE WOODFORD; RICHARD RIMMER; ROSANNE CAMPBELL; PETER SZEKRENYI; DEBRA JACQUEZ; GWENDOLYN MITCHELL; SAMPATH SURYADEVARA, M.D., JUAN JOSE TUR, M.D.; SHELLY KRUS, M.D.; MUHAMMAD ANWAR, M.D.; SUSAN HOGELUND, R.N.; and MADERA COMMUNITY HOSPITAL, a California Corporation,**<br><br>                    **Defendants.** | |

## 1.   INTRODUCTION

Plaintiffs move to consolidate *Allen v. Woodford*, et al., 1:05-CV-01104 OWW LJO ("*Allen* complaint") and *Scott,* et al. v. *Hickman*, et al., 1:05-CV-01282 OWW WMW ("*Scott et al.*

**1**

complaint"). The following Defendants oppose the Motion:

        1.   Madera Community Hospital ("Madera")

        2.   Muhammad Anwar, M.D. ("Anwar")

        3.   Jeanne Woodford, Richard Rimmer, Rosanne Campbell, Gwendolyn Mitchell, Sampath Suryadevara, M.D. and Juan Tur, M.D. (collectively California Department of Corrections ["CDC" defendants]) oppose in part.

Defendants Madera and Susan Hogelund ("Hogelund"), as well as Defendant Anwar have filed separate motions to sever Plaintiffs Boyce and Holmes from the *Scott, et al.* complaint. Plaintiffs Scott, Boyce, and Holmes oppose the motions.

Plaintiffs were at all relevant times or continue to be inmates incarcerated at the Central California Women's Facility ("CCWF") in Chowchilla, California, a facility of the CDC. The two lawsuits allege that Defendants are collectively responsible, either in their official or individual capacities, for faulty surgical procedures performed on each of them by Defendant Anwar. The purpose of the procedures was to treat infected ingrown hair and boils throughout Plaintiffs' bodies ("the medical condition"). Plaintiffs allege that Anwar's treatment was unduly invasive and wholly unnecessary, resulting in severe scarring, disfigurement, and physical injuries. As a result, Plaintiffs bring federal claims under 42 U.S.C. § 1983, the Eighth Amendment, and the Fourteenth Amendments against all Defendants. Plaintiffs also assert various state causes of action against the individual Defendants.

//

1          **2.   PROCEDURAL HISTORY**

2    <u>        **A.**</u>   ***SCOTT*, et al. v. *HICKMAN*, et al., 1:05-CV-01282-OWW-WMW**

3                **i.   Motion to Consolidate**

4          On July 17, 2006 Genea Scott ("Scott"), Regina Boyce

5    ("Boyce"), and Julie Holmes ("Holmes"), (collectively "*Scott*

6    Plaintiffs") filed their second amended complaint ("SAC").  (Doc.

7    17, *Scott* Plaintiffs' SAC.)   The *Scott* Plaintiffs then filed a

8    motion to consolidate on August 18, 2006.  (Doc. 28, *Scott*

9    Plaintiffs' Motion to Consolidate.)  Defendants Anwar filed an

10   opposition on September 15, 2006.  (Doc. 39, Anwar's Opposition

11   to Plaintiffs' Motion to Consolidate)  The *Scott* Plaintiffs filed

12   their reply on September 25, 2006.  (Doc. 44, Plaintiffs' Reply

13   to Opposition to Motion to Consolidate.)

14   <u>            **ii.   Motions to Sever**</u>

15         On August 17, 2006 Madera filed a motion to sever claims by

16   Plaintiffs Boyce and Holmes.  (Doc. 26, Madera's Motion to Sever

17   Claims.)   The following day on August 18, 2006 Defendant Anwar

18   also filed a motion to sever the claims by Boyce and Holmes.

19   (Doc. 30, Anwar Motion to Sever/Dismiss Plaintiffs' claims.)   On

20   September 15, 2006 Plaintiffs Scott, Boyce, and Holmes opposed

21   the motions.  (Doc. 39, Opposition to Defendants' Motions to

22   Sever.)  On September 25, 2006 both Defendant Madera and

23   Defendant Anwar filed their replies to Plaintiffs' opposition.

24   (Doc. 41, Madera's Reply to Plaintiff's Opposition to Sever

25   Claims; Doc. 45, Anwar's Reply to Plaintiffs' Opposition to Sever

26   Claims.)

27   *//*

28   *//*

                                    **3**

1    _____**B.**   ***ALLEN v. WOODFORD***, **et al., 1:05-CV-01104-OWW-LJO**

2    _____**i.   Motion to Consolidate**

3    Allen filed her second amended complaint ("SAC") on July 17,

4    2006. (Doc. 82, Allen SAC.)  On August 18, 2006 Allen filed a

5    request for judicial notice under Federal Rule of Evidence 201.

6    (Doc. 90, Allen's Request for Judicial Notice.)  Also on August

7    18, 2006, Allen filed a motion to consolidate her case with the

8    *Scott* case.  (Doc. 91, Allen's Motion to Consolidate.)

9    On September 15, 2006, Defendant Madera and Defendant Anwar

10   both filed oppositions to Allen's motion.  (Doc. 98, Madera

11   Opposition to Allen's Motion to Consolidate; Doc. 100, Anwar's

12   Opposition to Allen's Motion to Consolidate, Filed September 15,

13   2006.)  On September 15, 2006 CDC defendants filed a partial

14   opposition to Allen's motion to consolidate and an opposition to

15   Allen's request for judicial notice.  (Doc. 99, Woodford et. al

16   Partial Opposition to Allen's Motion to Consolidate and

17   Opposition to Request for Judicial Notice.)  On September 25,

18   2006 Allen filed a reply.  (Doc. 103, Allen's Reply to

19   Oppositions to Motion to Consolidate)

20                    **3.  <u>SUMMARY OF THE COMPLAINTS</u>**

21   **A.   General Allegations**

22   Plaintiffs allege that each of them suffered from the same

23   medical condition of infected ingrown hairs or boils in their

24   armpits while inmates at CCWF.  (Doc. 82, Allen SAC, ¶ 15; Doc.

25   17, Scott, et al. SAC, ¶ 22.)  Allen also suffered from the same

26   problem in her groin and upper buttocks.  (Doc. 82, Allen SAC, ¶

27   15.)

28   Plaintiffs allege that on or around 1996 through the events

**4**

1   of this complaint, Anwar, and his medical group, negotiated a

2   series of contracts between the CDC Defendants and Anwar under

3   which the California Department of Corrections agreed to pay

4   Anwar certain fees for surgeries Anwar performed on the CDC

5   inmates.  (Doc. 82, Allen SAC, ¶ 16)  According to Plaintiffs,

6   these contracts provided a specific fee that Anwar can charge for

7   listed treatments.  (*Id.*)  However, where the contract does not

8   set a specific billing rate for a listed procedure, the contract

9   guarantees Anwar a minimum reimbursement of 80% of his billing

10  rate for whatever service he invoices the CDC Defendants.  (*Id.*)

11  Plaintiffs allege that the contract gave Anwar a financial

12  incentive to deliberately and repeatedly act against the medical

13  interests of CDC inmates, because rather than providing the least

14  invasive and/or medically accepted treatments for common medical

15  conditions such as boils, Anwar routinely performed complex,

16  invasive, and wholly unnecessary surgical procedures.  (*Id.*)

17  Some of these procedures included abcessectomies, laprospopic

18  surgeries, and portocath insertions none of which were coded in

19  his contract with the CDC resulting in, increased fees to the CDC

20  Defendants.  (*Id.*)  Plaintiffs allege that the surgeries Anwar

21  performed were not necessary, caused permanent physical and

22  emotional injuries to patients, and were done to collect

23  exorbitant fees from the State regardless of their disastrous

24  effects on CCWF inmates. (*Id.*)

25      Plaintiffs also claim that for a significant period of time

26  prior to Plaintiffs' treatment by Anwar, the CDC Defendants were

27  aware of Anwar's misconduct and the substantial risk of harm

28  associated with his treatment of CDC inmates.  (Allen SAC, ¶ 17)

**5**

1   Plaintiffs allege that Anwar's misconduct was documented and
2   expressly noted in written complaints filed by CDC inmates to the
3   CDC Defendants and in internal communications between CDC
4   Defendants. (*Id.*)  Based on these complaints, the CDC Defendants
5   investigated Anwar. (*Id.*)  As a result of their investigation,
6   the CDC Defendants learned that Anwar routinely prescribed and
7   performed unneeded surgical treatments on CCWF inmates, with
8   devastating consequences. (*Id.*)  The CDC Defendants also learned
9   that Anwar obtained faulty consent from CCWF inmates. (*Id.*)
10  Anwar told them only that he would "lance" their boils, which he
11  described as posing only minor risks, but intended to conduct far
12  more serious and invasive surgeries for personal profit. (*Id.*)
13  The CDC Defendants also learned that the procedures Anwar
14  performed were not covered by the set fees under Anwar's contract
15  with the CDC, allowing Anwar to charge exorbitant fees to treat
16  relatively minor ailments with unnecessary, complex, and/or
17  experimental medical procedures. (*Id.*)  Plaintiffs allege that
18  despite this knowledge, and in conscious disregard of inmates'
19  health and safety, the CDC Defendants continued to refer patients
20  to Anwar and continued to pay Anwar to perform these unnecessary
21  and invasive surgeries. (*Id.*)

22      Plaintiffs also allege that Madera and its staff were
23  notified that Anwar was prescribing and performing unneeded
24  surgical treatments with devastating consequences on CCWF
25  inmates. (Doc. 17, Scott, et al. SAC, ¶ 25)  Despite this
26  knowledge, and in conscious disregard of Plaintiff's rights,
27  Madera continued to grant Anwar access to its facilities and
28  support staff. (*Id.*)

**6**

1  Plaintiffs are informed and believe that Madera and the CDC
2  Defendants were on notice of these constitutional violations as
3  early as 2002. (*Id.*, ¶ 26.)

4  **B.   Anwar's Treatment of Plaintiff Boyce**

5  Plaintiffs allege that after several attempts at treating
6  Boyce's medical condition with antibiotics, Defendant Tur
7  informed Boyce that she needed to have the boils under her arm
8  "lanced." (Doc. 17, Scott et al. SAC, ¶ 27.) With the knowledge
9  and approval of CDC Defendants, Boyce initially consented to have
10 her boils lanced. (*Id.*) Anwar was to perform the procedure.
11 Plaintiffs allege that the medical procedure was described to
12 Boyce as a minor procedure to remove infected hair follicles.
13 According to Plaintiffs, Boyce was never informed that the
14 treatment Anwar intended to perform and authorized by the CDC
15 Defendants involved invasive surgery to remove large portions of
16 skin, glands, muscle and tissue. (*Id.*)

17 The CDC Defendants referred Boyce to Anwar, who was under a
18 long term contract with the CDC Defendants to provide medical
19 treatment for CCWF inmates. (*Id.*, ¶ 28.) Plaintiffs allege that
20 Defendant Mitchell signed all referrals for treatment by
21 Defendants Madera and Anwar. (*Id.*) Prior to Boyce's admission
22 at Madera, Boyce received a consultation by Anwar, who quickly
23 felt her underarm and confirmed that the "boils" needed to be
24 "lanced." (*Id.*) When a CCWF nurse noted to Boyce that blood
25 work was being performed which could be preparation for surgery,
26 Plaintiffs claim that Boyce became worried and feared for her
27 personal safety. (*Id.*) Boyce subsequently informed Tur that she
28 would refuse any surgery. (*Id.*) Plaintiffs allege that Tur

**7**

explained the procedure as "minor" and threatened that if Boyce refused to consent to the surgery, then CCWF and the CDC Defendants would no longer provide treatment for her Medical Condition. (*Id.*) According to Plaintiffs, Boyce agreed to the surgery under duress. (*Id.*)

When the date for Boyce's surgery arrived, a Madera nurse provided Boyce with a consent form and instructed her that she did not need to read it. (*Id.*, ¶ 29.) Plaintiffs claim that Boyce told the nurse that her boils had already cleared up and asked whether surgery was still required. (*Id.*) A Madera employee instructed Boyce that surgery was still required. (*Id.*) Boyce then reviewed the consent form, which included a Latin term she did not understand. (*Id.*) Boyce asked another Madera nurse what the term meant and the nurse translated the term as "boils." (*Id.*) Plaintiffs argue that Boyce believed she was only consenting to have her boils "lanced." (*Id.*) Anwar, with the assistance of Madera staff and the approval of the CDC Defendants, then performed a far more invasive surgery than anyone ever explained to Boyce. (*Id.*) Plaintiffs allege that During this surgery, Anwar removed large sections of skin and tissue, including glands and muscles, from both armpits. (*Id.*) Anwar did not perform any skin graft to restore mobility. (*Id.*)

According to Plaintiffs, Boyce was left with limited flexibility in her arms and limited ability to raise her arms after the surgery. (*Id.*, ¶ 30.) She suffers from radiating pain in her arms and from loss of sensation from severed nerves. (*Id.*) Plaintiffs also claim that Boyce suffers from severe emotional distress because of the physical injuries,

**8**

disfigurement, disability, pain, and humiliation resulting from the improper surgery. (*Id.*)  Following the surgery Boyce complained to the CDC Defendants regarding her disfigurement and permanent injuries.  (*Id.*)

According to Plaintiffs, the CDC Defendants investigated Anwar's treatment.  (*Id.*, ¶ 30.)  At the direction and authorization of Mitchell and other high-level CDC Defendants, Suryadevara interviewed Boyce and reviewed her medical files.  (*Id.*)  Plaintiffs claim these records raised serious concerns regarding Anwar and Madera's treatment of Boyce and that, despite the notice of improper treatment of Boyce, the CDC Defendants continued to refer patients to Anwar and Madera for treatment of the same medical conditions.  (*Id.*)  Plaintiffs argue that no corrective surgery has been offered to Boyce and Boyce's medical condition returned three weeks after her surgery.  (*Id.*)

Plaintiffs further argue that because her treatment left her permanently disabled and disfigured, Boyce followed CCWF grievance procedures.  (*Id.*, ¶ 31.)  On April 19, 2004 Boyce sent a direct 602 appeal addressed to Woodford and Mitchell describing her mistreatment and lack of consent, and filed a claim with the Victim Compensation and Government Claims Board of the State of California.  (*Id.*)  As a result, the CDC Defendants, including Woodford, Suryadevara and Mitchell (who participated in and/or authorized an investigation), were on notice of the disastrous consequences of Anwar's treatment for the Medical Condition on or before April 2004.  (*Id.*)

On July 1, 2004 Boyce mailed Madera a notice of her intent to sue which described in detail the surgery performed by Anwar,

**9**

1  the lack of her informed consent, and the effects of the surgery.

2  (*Id.*, ¶32.)  In spite of this notice of intent to sue, Plaintiffs

3  argue that Madera allowed Anwar to continue performing identical

4  surgeries at its facility.  (*Id.*)

5       **C.   Allen's Medical Treatment**

6       Plaintiffs allege that in early 2004, Allen repeatedly

7  requested from Defendant Tur and another CCWF physician, Dr.

8  Kruse, that she be provided non-surgical medical treatment from a

9  dermatologist for her medical condition.  (Doc. 82, Allen SAC, ¶

10 24)  Tur and Kruse repeatedly refused her requests.  (*Id.*)

11 Despite notice of the prior injury and battery to Boyce as well

12 as other CCWF inmates, the CDC Defendants referred Allen to Anwar

13 instead of a dermatologist as she requested.  (*Id.*)  Allen was

14 informed by the CDC Defendants that Anwar would perform a routine

15 procedure described as "lancing" which she was told involved only

16 a "slight cut to remove hair follicles."  (*Id.*)  Kruse informed

17 Allen that her medical condition was limited to "a follicle

18 problem."  (*Id.*)

19      Plaintiffs claim that prior to the surgery, a Madera nurse

20 who said nothing about the impending surgery handed Allen a paper

21 she described as a "liability paper" and instructed Allen to sign

22 it.  (*Id.*)  According to Plaintiffs, neither Madera nor Anwar

23 ever explained to Allen the procedure they intended to perform on

24 her.  (*Id.*)  Allen only consented to the lancing of boils in her

25 armpits, groin and upper buttocks.  (*Id.*)  In spite of this

26 limited consent, Anwar surgically removed large swaths of skin

27 and tissue, including glands and muscles, from both armpits.

28 (*Id.*)  Anwar's invasive surgery was not done in response to any

1  complications arising during the surgery.  (*Id.*)

2      Plaintiffs further allege that the CDC Defendants knowingly

3  permitted Anwar to perform an invasive surgery that was not

4  authorized by Allen.  (Doc. 82, Allen SAC, ¶ 25)  According to

5  Plaintiffs, the CDC Defendants and Madera were aware that Anwar

6  previously treated boils with unwarranted, invasive, and

7  unauthorized surgeries when he treated Boyce as well as other CDC

8  inmates.  (*Id.*)  Nevertheless, neither the CDC Defendants nor

9  Madera instructed Allen that Anwar's surgery on July 21, 2004,

10 would, and did, go far beyond the scope of what Allen consented

11 to have performed.  (*Id.*)  The CDC Defendants contracted with

12 Anwar to perform the same surgery on Allen that he had previously

13 performed on Boyce.  As in Boyce's case, Anwar did not perform

14 any skin graft to restore Allen's mobility.  (*Id.*)

15     Plaintiffs claim that after the surgery, Allen was left with

16 limited flexibility in both arms, and has limited ability to

17 raise her arms.  (Doc. 82, Allen SAC, ¶ 26)  According to the

18 complaint, Allen suffers from radiating pain in her arms and from

19 loss of sensation from severed nerves.  (*Id.*)  Anwar also

20 performed surgery on Allen's groin and buttocks, resulting in

21 severe scarring and pain in these areas.  (*Id.*)  Allen suffers

22 from severe emotional distress because of these physical

23 injuries, disfigurement, disability, pain and humiliation

24 resulting from the improper surgery.  (*Id.*)  No corrective

25 surgery or other corrective treatment or rehabilitation has been

26 offered to her.  (*Id.*)

27 //

28 //

**11**

1

        **D.    Subsequent Treatment of Other Inmates**

2    In 2004, another CCWF inmate, Gail Wyatt[1], complained to the
3 CDC Defendants regarding a boil in her left armpit.  (Doc. 82,
4 Allen SAC, ¶ 27; Doc. 17, Scott et al., ¶ 37.)  Despite their
5 knowledge regarding Madera and Anwar's disastrous surgeries on
6 Boyce, Allen, and others, and with conscious disregard of Wyatt's
7 rights, the CDC Defendants sent Wyatt to Madera for treatment by
8 Anwar.  (*Id.*)  On October 14, 2004, the CDC Defendants hired
9 Anwar to perform surgery on Wyatt's left armpit at Madera
10 hospital.  (*Id.*)  But, Plaintiffs claim that Anwar did not
11 perform surgery on her armpit as Wyatt had authorized.  (*Id.*)
12 Instead, Anwar's surgery left an open wound in Wyatt's arm that
13 later developed into a serious and painful staph infection.
14 (*Id.*)  After the initial surgery, Anwar conducted a follow-up
15 visit with Wyatt at CCWF.  (*Id.*)  Anwar ordered Wyatt back to
16 Madera, and on November 18, 2004 he performed a second invasive
17 surgery, this time on Wyatt's armpit.  (*Id.*)  After these
18 surgeries, like the other inmates, Wyatt was left with limited
19 flexibility in her arms, and has limited ability to raise her
20 arms.  (*Id.*)  She suffers from radiating pain in her arms and
21 from loss of sensation from severed nerves.  (*Id.*)  Wyatt suffers
22 from severe emotional distress because of the physical injuries,
23 disfigurement, disability, pain and humiliation resulting from
24 the improper surgery.  (*Id.*)

25    Plaintiffs also allege that in early 2005, another CCWF
26 inmate, Julie Holmes, requested medical treatment for boils under

27    _____

28    [1] Wyatt is not a named Plaintiff in this action.

**12**

her arm.  (Doc. 82, Allen SAC, ¶ 28; Doc. 17, Scott et al. SAC, ¶ 38.)  Kruse initially treated this Medical Condition with antibiotics.  (*Id.*)  Later, despite the CDC Defendants' knowledge regarding Madera and Anwar's surgeries on Boyce, Allen, Wyatt, and others, the CDC Defendants sent Holmes to Madera for treatment by Anwar.  (*Id.*)  Anwar scheduled surgery three weeks later.  (*Id.*)  Prior to the surgery date, Holmes' Medical Condition resolved itself.  (*Id.*)  Holmes informed the CDC Defendants that her Medical Condition was alleviated and no surgery was necessary.  (*Id.*)  Nevertheless, the CDC Defendants permitted Anwar to conduct a pre-surgery visit in which Anwar felt Holmes' armpit and stated that he would still perform the surgery because the boils could return at any time.  (*Id.*)

According to Plaintiffs' complaint on May 4, 2005, CDC Defendants sent Holmes to Madera where Anwar performed a surgery that was far more invasive than the "minor" procedure described to Holmes, and to which she had consented.  (Doc. 82, Allen SAC, ¶ 29; Doc. 17, Scott et al. SAC, ¶ 39.)  After the surgery, Holmes was left with limited flexibility in her arms, has limited ability to raise her arm.  (*Id.*)  She suffers from radiating pain in her arms and from loss of sensation from severed nerves. Holmes suffers from severe emotional distress because of the physical injuries, disfigurement, disability, pain and humiliation resulting from the improper surgery.  (*Id.*)

Plaintiffs also allege that in February 2005, another CCWF inmate, Genea Scott, sought treatment for a boil under her left arm.  (Doc. 82, Allen SAC, ¶ 30; Doc. 17, Scott et al. SAC, ¶ 40.)  Despite knowledge of the consequences of Anwar's prior

treatments for the Medical Condition on Boyce, Allen, Wyatt,
Holmes, and others, the CDC Defendants referred Scott to Anwar.
(*Id.*)  On February 14, 2005, Anwar lanced the boil at CCWF, but
did not properly treat it, failing to "pack" the boil after it
was lanced.  (*Id.*)  Plaintiffs claim that, as a result, the boil
did not heal, but grew bigger and more painful, and Scott
required additional treatment.  (*Id.*)  On July 6, 2005, one or
more CDC Defendants authorized and hired Anwar to treat Scott
again, this time at Madera.  (*Id.*)  Anwar and a Madera nurse,
Susan Hogelund, told Scott that the surgery Anwar would perform
was an appropriate and simple treatment option.  (*Id.*)

Scott only consented to have the boil re-lanced in her
armpit.  (Doc. 82, Allen SAC, ¶ 31; Doc. 17, Scott et al. SAC, ¶
41.)  Scott even marked the boil with an "X" prior to the surgery
at a nurse from Madera's suggestion.  (*Id.*)  Nevertheless, Anwar
never touched the boil.  (*Id.*)  Instead, Anwar removed a large
section of skin and tissue, including milk glands and lymph
nodes, from Scott's left breast and armpit.  (*Id.*)  Plaintiffs
allege that as with the other inmates, Anwar did not perform any
skin graft to restore mobility.  (*Id.*)

According to Plaintiffs Scott was left with limited
flexibility in her arm and has limited ability to raise her arm.
(Doc. 82, Allen SAC, ¶ 32; Doc. 17, Scott et al. SAC, ¶ 42.)  She
suffers from radiating pain in her arm and from loss of sensation
from severed nerves.  (*Id.*)  Scott cannot pull, lift, or push
with her left arm.  (*Id.*)  Scott suffers from severe emotional
distress because of the physical injuries, disfigurement,
disability, pain, and humiliation resulting from the improper

**14**

1  surgery.  (*Id.*)   No corrective surgery or other corrective

2  treatment has been offered to Scott.  (*Id.*)

3       **E.   Participation of Individual Defendants**

4            **i.   Jeanne Woodford**

5       Plaintiffs claim that as the Director of the California

6  Department of Corrections, Defendant Woodford had the authority

7  to review and cancel the CDC's contract with Anwar and Madera at

8  any time.  (Doc. 82, Allen SAC, ¶ 33)   In addition, Woodford was

9  responsible for the health and well-being of CCWF inmates

10  including Allen.  (*Id.*)   Despite Woodford's knowledge of, and

11  investigation into prior complaints involving Anwar's surgical

12  treatments for the same Medical Condition, Plaintiffs allege that

13  Woodford continued allowing the CDC Defendants to refer patients

14  to Anwar.  (*Id.*)   Plaintiffs argue that Woodford's deliberate

15  indifference to Plaintiffs' rights is demonstrated by her

16  unwillingness to cancel Anwar's contract and continuing to allow

17  Anwar to operate on CCWF inmates such as Boyce, Allen, Holmes,

18  Wyatt and Scott.  (*Id.*)   Plaintiffs argue that Woodford continued

19  to allow the operations even after she received Boyce's 602

20  appeal, after the CDC initiated an investigation into Anwar's

21  mistreatment, and after the CDC confirmed that Anwar was

22  performing needless surgeries for his own financial gain.  (*Id.*)

23            **ii.   Richard Rimmer**

24       Plaintiffs also bring a claim against Defendant Richard

25  Rimmer ("Rimmer"), as Acting Director of the California

26  Department of Corrections.  (Doc. 82, Allen SAC, ¶ 34)

27  Plaintiffs argue that Rimmer had the authority to review and

28  cancel the CDC's contract with Anwar and Madera at any time.

**15**

(*Id.*)   In addition, Rimmer was responsible for the health and
well-being of CCWF inmates including Allen.  (*Id.*)  Despite
Rimmer's knowledge of an investigation into prior complaints
involving Anwar and his surgical treatments for the same Medical
Condition, Rimmer continued to allow the CDC Defendants to refer
patients to Anwar.  (*Id.*)  Rimmer's deliberate indifference to
Plaintiffs' rights is demonstrated by his unwillingness to cancel
Anwar's contract and continuing to allow Anwar to operate on CCWF
inmates.  (*Id.*)

### iii.  Roseanne Campbell

Plaintiffs also allege that Defendant Roseanne Campbell
("Campbell"), in her capacity as Deputy Director of Healthcare
Services of the CDC, had the authority to review and cancel CDC's
contract with Anwar and Madera at any time.  (Doc. 82, Allen SAC,
¶ 35)  In addition, Campbell was responsible for the health and
well-being of CCWF inmates including Allen.  (*Id.*)  Plaintiffs
argue that despite Campbell's knowledge of an investigation into
prior complaints involving Anwar's surgical treatments for the
same Medical Condition, Campbell continued to allow the CDC
Defendants to refer patients to and to have patients treated by
Anwar.  (*Id.*)  According to Plaintiffs, Campbell's deliberate
indifference to Plaintiff's rights is demonstrated by her
unwillingness to cancel Anwar's contract and continuing to allow
Anwar to operate on CCWF inmates such as Boyce, Allen, Holmes,
Wyatt and Scott with knowledge of his alleged gross incompetence.
(*Id.*)

### iv.   Gwendolyn Mitchell

Plaintiffs also bring an action against Gwendolyn Mitchell

**16**

("Mitchell"), the Warden of CCWF.  (Doc. 82, Allen SAC, ¶ 36)
Plaintiffs argue that Mitchell's decision to acquiesce in
continuing to authorize patient referrals to Anwar and his
medical group (including signing individual patient
authorizations for treatment by Anwar) demonstrates deliberate
indifference to Plaintiff's rights.  (*Id.*)  According to
Plaintiffs, Mitchell continued the referrals even after she
received Boyce's 602 appeal describing Anwar's conduct and lack
of consent, after the CDC initiated an investigation into Anwar's
mistreatment, and after the CDC confirmed that Anwar was
performing needless surgeries for his own financial gain which
resulted in the wonton disfigurement of multiple inmates.  (*Id.*)

### v.    Sampath Suryadevara

Defendant Sampath Suryadevara ("Suryadevara") is the Chief
Medical Officer of CCWF.  (Doc. 82, Allen SAC, ¶ 37)   According
to Plaintiffs, Suryadevara continued to refer patients to Anwar
and his medical group despite his personal review of
patients—including Boyce, Allen, Wyatt, Holmes, and Scott—and
their medical records following botched treatments by Anwar.
(*Id.*)  Suryadevara's continued referrals, even after he received
Boyce's 602 appeal, after the CDC initiated an investigation into
Anwar's mistreatment, and after the CDC confirmed that Anwar was
performing needless surgeries for his own financial gain
demonstrates deliberate indifference to Plaintiff's rights.
(*Id.*)  Plaintiffs claim that after reviewing the files and the
post-operative condition of Anwar's final victim, Suryadevara
acknowledged to Scott that Anwar had "butchered" her and Anwar
would not continue to operate on CCWF inmates.  (*Id.*)  Anwar's

contract with the CDC was not renewed in late 2005.  (*Id.*)

### vi.  Juan Jose Tur

Defendant Juan Jose Tur ("Tur"), a CCWF physician, continued
to refer patients to Anwar and his medical group despite his
personal review of other patients—including Boyce, Allen, Wyatt,
Holmes and Scott—and their medical records following botched
treatments by Anwar.  (Doc. 82, Allen SAC, ¶ 38)  Plaintiffs
allege that Tur's continued referrals, in spite of his knowledge
of Anwar's disfigurement of multiple inmates for treatment of the
same Medical Condition, and his personal participation in the
CDC's investigation of Anwar, demonstrates deliberate
indifference to Plaintiff's rights.  (*Id.*)

### vii. Roderick Hickman

As Secretary of the California Department of Corrections and
Rehabilitation, Defendant Roderick Hickman ("Hickman") had the
authority to review and cancel the CDC's contract with Anwar and
Madera at any time.  (Doc. 17, Scott et al. SAC, ¶ 43)   In
addition Plaintiffs allege that Defendant Hickman was responsible
for the care and treatment of inmates in the California prison
system.  (*Id.*)  Despite Hickman's knowledge of, and investigation
into prior complaints involving Anwar's dangerous and disfiguring
surgical treatments for the same Medical Condition, Plaintiffs
argue that he continued allowing the CDC Defendants to refer
patients to Anwar.  (*Id.*)  Hickman's deliberate indifference to
Plaintiffs' rights is demonstrated by his unwillingness to cancel
Anwar's contract and continuing to allow Anwar to operate on CCWF
inmates.  (*Id.*)  This was true even after Plaintiff Boyce filed
her 602 appeal, after the CDC initiated an investigation into

**18**

Anwar's mistreatment, and after the CDC confirmed that Anwar was performing needless surgeries for his own financial gain. (*Id.*)

### viii.   Frenchie Sellf

As Assistant Secretary of the California Department of Corrections and Rehabilitation, Defendant Frenchie Sellf ("Sellf") was responsible for the care and treatment of inmates in the California prison system, including Plaintiffs. (Doc. 17, Scott et al. SAC, ¶ 44)  Despite Sellf's knowledge of, and investigation into prior complaints involving Anwar's dangerous and disfiguring surgical treatments for the same Medical Condition, Sellf continued allowing the CDC Defendants to refer patients to Anwar. (*Id.*)  Plaintiffs argue that Sellf's deliberate indifference to Plaintiffs' rights is demonstrated by the unwillingness to cancel Anwar's contract and continuing to allow Anwar to operate on CCWF inmates. (*Id.*)  This was true even after Plaintiff Boyce filed her 602 appeal, after the CDC initiated an investigation into Anwar's mistreatment, and after the CDC confirmed that Anwar was performing needless surgeries for his own financial gain. (*Id.*)

### ix.   Peter Farber-Szekrenyi

As Director of Correctional Health Care Services of the California Department of Corrections, Defendant Peter Farber-Szekrenyi ("Szekrenyi") had the authority to review and cancel the CDC's contract with Anwar and Madera at any time. (Doc. 17, Scott et al. SAC, ¶ 48)  In addition, Szekrenyi was responsible for the health and well-being of CCWF inmates including Plaintiffs. (*Id.*)  Despite Szekrenyi's knowledge of an investigation into prior complaints involving Anwar and his

**19**

1  dangerous and disfiguring surgical treatments for the same
2  Medical Condition, Szekrenyi continued to allow the CDC
3  Defendants to refer patients to Anwar.   (*Id.*)  Plaintiffs argue
4  that Szekrenyi's deliberate indifference to Plaintiffs' rights is
5  demonstrated by his unwillingness to cancel Anwar's contract and
6  continuing to allow Anwar to operate on CCWF inmates such as
7  Boyce, Allen, Holmes, Wyatt and Scott.  (*Id.*)

8          **x.   Shelly Kruse**

9          Defendant Shelly Kruse ("Kruse"), a CCWF physician,
10 continued to refer patients to Anwar and his medical group
11 despite her personal review of patients—including Boyce, Allen,
12 Wyatt, Holmes and Scott—and their medical records following
13 botched treatments by Anwar.  (Doc. 17, Scott et al. SAC, ¶ 52)
14 Kruse's continued referrals, in spite of her knowledge of Anwar's
15 disfigurement of multiple inmates for treatment of the same
16 Medical Condition, and her personal participation in the CDC's
17 investigation of Anwar, demonstrates deliberate indifference to
18 Plaintiffs' rights.  (*Id.*)

19         **xi.  Debra Jacquez**

20         Defendant Debra Jacquez was at all relevant times acting
21 Warden of the CCWF and is sued herein in her individual capacity.
22 (Doc. 17, Scott et al. SAC, ¶ 10)  Plaintiffs are informed and
23 believe that Defendant Jacquez is currently responsible for the
24 care and treatment of inmates incarcerated at CCWF, including
25 Plaintiffs.  (*Id.*)  Despite the ability to terminate Anwar's
26 contract with the state, Defendant Jacquez continued to allow
27 Anwar to operate on CCWF inmates, knowing that Anwar had a
28 history of performing disfiguring surgeries on CCWF inmates that

**20**

were not medically necessary and that he performed those unnecessary surgeries so that he could charge exorbitant fees to the State of California. (*Id.*)

**F.   Summary of Causes of Action**

**i.   *SCOTT,* et al. v. *HICKMAN*, et al., 1:05-CV-01282-OWW-WMW**

**a. Plaintiff Genea Scott**

Plaintiff Scott brings federal causes of action against all Defendants for violations under 42 U.S.C. 1983 and under the Eighth and Fourteenth Amendments. (Doc. 17, Scott et al. SAC, ¶¶ 55-66.)

Plaintiff Scott also asserts several state causes of action:

1.   Professional Negligence against Anwar, Hogelund, Madera, Suryadevara, Kruse, and Tur in their individual capacities (Doc. 17, Scott et al. SAC, ¶¶ 67-71.)

2.   Civil Battery against Anwar. (*Id.,* ¶¶ 72-75.)

3.   Gross Negligence against all defendants (*Id.,* ¶¶ 76-80.)

4.   Intentional Misrepresentation against Defendants Anwar, Hogelund, Madera, Suyadevara, Kruse, Tur in their individual capacities. (*Id.,* ¶¶ 81-88.)

5.   Negligent Misrepresentation against Anwar, Hogelund, Madera, Suyadevara, Kruse, Tur in their individual capacities. (*Id.,* ¶¶ 89-93.)

6.   Intentional Infliction of Emotional Distress against Anwar. (*Id.,* ¶¶ 94-98.)

7.   Negligent infliction of Emotional Distress against Anwar. (*Id.,* ¶¶ 99-103.)

**b. Plaintiffs Regina Boyce and Julie Holmes**

Plaintiffs Boyce and Holmes bring federal causes of action

**21**

for violations under 42 U.S.C. 1983 and under the Eighth and Fourteenth Amendments against Defendants Anwar, Hogelund, and Madera only.  (Doc. 17, Scott et al. SAC, ¶¶ 55-66.)

Plaintiffs Boyce and Holmes also assert several state causes of action:

      1.   Professional Negligence against Anwar, Hogelund, and Madera.  (Doc. 17, Scott et al. SAC, ¶¶ 67-71.)

      2.   Civil Battery against Anwar.  (*Id.*, ¶¶ 72-75.)

      3.   Gross Negligence against Anwar, Hogelund, and Madera.  (*Id.*, ¶¶ 76-80.)

      4.   Intentional Misrepresentation  against Anwar, Hogelund, and Madera. (*Id.*, ¶¶ 81-88.)

      5.   Negligent Misrepresentation against Anwar, Hogelund, and Madera *Id.*, ¶¶ 89-93.)

      6.   Intentional Infliction of Emotional Distress against Anwar.  (*Id.*, ¶¶ 94-98.)

      7.   Negligent Infliction of Emotional Distress against Anwar.  (*Id.*, ¶¶ 99-103.)

**ii.**    ***ALLEN v. WOODFORD*, et al., 1:05-CV-01104-OWW-LJO**

Allen brings federal causes of action against all Defendants for violations under 42 U.S.C. 1983 and under the Eighth and Fourteenth Amendments.  (Doc. 82, Allen SAC, ¶¶ 41-50)  Allen also brings several state causes of actions against Defendants:

      1.   Professional Negligence against Defendants Anwar, Madera, Suryadevara, and Tur in their individual capacities.

      2.   Civil Battery against Anwar.

      3.   Gross Negligence against all Defendants in their individual capacities.

22

4.    Intentional Misrepresentation against
      Defendants Anwar, Madera, Suryadevara,
      and Tur in their individual capacities

5.    Negligent Misrepresentation against
      Defendants Anwar, Madera, Suryadevara,
      and Tur in their individual capacities

6.    Intentional Infliction of Emotional
      Distress against Anwar

7.    Negligent Infliction of Emotional
      Distress against Anwar

(Id., ¶¶ 51-83)

### 4.   **MOTION TO CONSOLIDATE**

Federal Rule of Civil Procedure 42(a) provides:

> When actions involving a common question of
> law or fact are pending before the court,
> [the court] may order a joint hearing or
> trial of any or all the matters in issue in
> the actions; it may order all the actions
> consolidated; and it may make such orders
> concerning proceedings therein as may tend to
> avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a).  Rule 42(a) permits consolidation of
"actions involving a common question of law or fact." *Paxonet
Communs., Inc. v. Transwitch Corp.,* 303 F. Supp. 2d 1027, 1028-
1029 (N.D. Cal. 2003).  Once a common question has been
established, "consolidation is within the broad discretion of the
district court." *Id.* (internal quotations omitted.)  But "even
where cases involve some common issues of law or fact,
consolidation may be inappropriate where individual issues
predominate." *See IN re Consol. Parlodel Litig.,* 182 F.R.D. 441,
447 (D.N.J. 1998).  To determine whether to consolidate, the
interest of judicial convenience is weighed against the potential
for delay, confusion, and prejudice caused by consolidation.  *Id.*
(citing *Southwest Marine, Inc. v. Triple A Machine Shop, Inc.,*

23

720 F. Supp. 805, 807 (N.D. Cal. 1989).)  The moving party bears the burden of showing consolidation is appropriate. *Consol. Parlodel Litig.,* 182 F.R.D. at 447.  The legal claims asserted by all Plaintiffs in this case are identical.

### A.    Request for Judicial Notice

Plaintiff Allen requested judicial notice of the following court records in support of her motion to consolidate:

> 1.    Anwar's complaint and all attached exhibits filed in *Anwar v. California*, No. 06CECG0186 (Superior Court of the State of California, County of Madera).
>
> 2.    Letter dated November 18, 2005 from Chrisman Swanberg, Senior Staff Counsel, California Department of Corrections and Rehabilitation to Michael Ball, Counsel for Dr. Anwar, dated November 18, 2005, filed as an attachment to Dr. Anwar's complaint in *Anwar v. California*.

Under Federal Rule of Evidence 201, "a court may take judicial notice of matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).  The Court may take judicial notice of documents filed in any federal or state court. *see Holder v. Holder,* 305 F.3d 854, 866 (9th Cir. 2002)(taking judicial notice of filings to the California Court of Appeal.

Allen's request for judicial notice is **GRANTED** as to their existence and the fact that they were filed, but not as to any disputed matters set forth therein.

### B.    Common Questions of Law and Fact Predominate Over Individual Questions

Plaintiffs' argue that the *Allen* and *Scott et al.* cases should be consolidated because they allege the same pattern of

conduct by Defendant Anwar, Madera, and the CDC staff.[2]
Plaintiffs were all inmates at the CCWF at the time of treatment.
All Plaintiffs make identical core allegations in their
complaints:

    1.  Anwar performed an unnecessary medical
        procedure on Plaintiffs that left
        Plaintiffs permanently disfigured.

    2.  He did this without obtaining
        Plaintiffs' consent.

    3.  CDC Defendants had knowledge of Anwar's
        faulty procedure and allowed it to
        happen in deliberate indifference to
        Plaintiffs' medical needs

    4.  Madera also had knowledge of the faulty
        procedure and allowed it to happen in
        deliberate indifference to Plaintiffs'
        medical needs

    5.  Madera staff assisted Anwar in
        performing the unnecessary procedure on
        Plaintiffs.

    Further, both cases seek to establish a pattern of conduct

---

    [2] Plaintiffs cite several cases in support of their argument
for consolidation that are factually distinguishable.  First,
Plaintiffs cite to *Bowman v. Legato,* 195 F.R.D. 655, 657 where
the court granted consolidation for 31 related class action suits
asserting securities fraud.  However, all the parties in *Bowman*,
including Defendants, stipulated to consolidation and the issue
was which plaintiffs should be considered the "lead" plaintiffs.
*Bowman* is distinguishable from this case on the law and facts.
    Plaintiffs also cite *Gonzalez v. Arizona*, 2006 U.S. Dist.
Lexis 54880 (AZ Dist. 2006) (a case involving claims of an
alleged conflict between an Arizona State ballot measure and a
federal statute), *Perez-Funez v. INS*, 611 F.Supp. 990, 993-994
(C.D. Cal. 1984) (a case involving a due process challenge
against the Immigration and Naturalization Service's voluntary
departure procedure with respect to unaccompanied minor aliens
brought under Fed. R. Civ. P. 23(a)), and *United States v.
Chicago*, 385 F.Supp. 540 (N.D. Ill. 1974) (a case involving a
motion for consolidation of three actions alleging discriminatory
hiring, promotion, and assignment practices in the Chicago Police
Department.)  These cases are also distinguishable.

by Dr. Anwar in treating CCWF inmates for the CDC with the same faulty medical procedures.  Both cases seek to provide evidence of Madera Hospital's knowledge of Anwar's practices and the knowledge and participation of its staff.

Defendants, on the other hand argue that the lawsuits do not involve common questions of fact and law.  Defendants argue that each Plaintiff "has her own story and each story involves numerous different witnesses, documents and evidence." Defendants argue that the actual events that transpired at Madera on the different days of surgery for each Plaintiff are different and involve different medical documentation.  However, Defendants, other than to identify four different patients, do not specify how the events for each defendant are different. Further Defendants concede that the Plaintiffs share common "stories" and types of medical documentation.

The case of *Young v. City of Augusta, 59 F.3d 1160 (11th Cir. 1995)*, is instructive.  Young involved a Plaintiff's Eighth Amendment claim against prison officials for improper treatment of her mental health condition.  Plaintiff Young alleged that the City of Augusta failed to adequately select or train jail personnel to deal with inmates suffering from mental illness. *Young v. City of Augusta,* 59 F3d 1160, 1165 (11th Cir. 1995). Plaintiff sought to consolidate her case with the case of another of her attorney's clients who also brought an Eighth Amendment claim against the City Jail.  *Id.* at 1165.  The court found that there were differences between the two actions in that each plaintiff alleged a different set of facts concerning his or her *particular* medical needs and the responses made by jail

**26**

employees.  *Id* at 1168.  However the court expressly rejected the magistrate judge's finding that there were no common issues of law or fact in the cases and reasoned that consolidation would have been appropriate.[3]  *Id.* at 1168-1169.  According to the court, consolidation of both cases would have made sense.  *Id.* at 1170.  Both actions contained the same allegations of deliberate indifference to Plaintiffs' medical needs by jail officials.  *Id.*  Both actions claimed a city custom, practice, or policy of deliberate indifference in providing mental health treatment.  *Id.*  The core issue of liability was whether the city could be held accountable for Plaintiffs' alleged constitutional deprivations.  *Id.*  Both cases were assigned to the same district judge and followed a similar course of development.  *Id.* at 1169.  In both actions the parties would have to prove the same elements to establish their claims.  *Id.* at 1169.

In this case, all the Plaintiffs bring identical claims for civil rights violations under 42 U.S.C. 1983 and the Eighth and Fourteenth Amendments by the same agency, CDC, at the same medical facility, Madera County Hospital, and the same treating physician.  All Plaintiffs also allege identical state law causes of action.  Factual differences exist in both the *Allen* and *Scott et al.* cases.[4]  However, they share the same core issues of

_____

[3]  However, the Court did not find that the magistrate abused his discretion in denying Plaintiff's motion given the permissive nature of Rule 42(a) and because Plaintiffs were still able to establish their claims without consolidation.

[4]  While the causes of action asserted are the same in both actions, different Plaintiffs assert different causes of action against different defendants.  For example, Plaintiffs Boyce and

1  whether Defendants can be held accountable for the alleged civil

2  rights and state law deprivations in medical treatment of

3  prisoners claimed by the Plaintiffs.

4       The proof required to establish such claims will not be

5  entirely identical in each case.  Individual differences exist as

6  to how each plaintiff was allegedly injured.  However, all cases

7  were assigned to the same district court.  In both actions the

8  Plaintiffs must prove that CDC had a custom, practice, or policy

9  of deliberate indifference in providing medical health treatment.

10  This evidence is extensive and will be the same in each case.

11  The proof required is that the alleged violations were not

12  isolated instances.  *Young*, 59 F.3d at 1169.

13       Anwar attempts to distinguish *Young* by arguing that here the

14  issue is not merely whether the CDC may be held liable for the

15  alleged deprivations of Plaintiffs, but whether or not there were

16  such deprivations.  Anwar argues that the issue in *Young* was

17  failure to provide psychiatric care because of inadequate

18  selection and training of jail personnel.  In this case, the

19  issue is not whether there was a failure to provide medical

20  treatment but whether the medical treatment provided to

21  Plaintiffs fell below the standard of care.

22       The *Young* case involved many issues, only one of which was

23  the adequate selection and training of jail employees.  As in

24

25  Allen assert their civil rights claims against all defendants

26  whereas Plaintiffs Boyce and Holmes assert their civil rights
   claims against Anwar, Hogelund, and Madera only.  However,

27  because the causes of action are identical in both cases, the
   parties will have to prove the same elements to establish their

28  claims.

1    this case, *Young* also involved the threshold issue of whether

2    there was an Eighth Amendment violation with respect to

3    Plaintiff's medical care.  *Young,* 59 F.3d at 1169.  This

4    threshold issue involves an inquiry into the existence of a

5    pattern of deliberate indifference to each Plaintiff's known

6    medical needs.  This inquiry existed in *Young* and likewise exists

7    in both the *Allen* and *Scott et al.* actions.

8         There are sufficient common questions of law in the *Allen*

9    and *Scott et al.* actions that predominate over the individual

10   ones.[5]  The question is whether the benefits of consolidating the

11   cases for trial outweigh the potential prejudice to the parties.

12        **C.   Consolidation Will Promote Judicial Efficiency, Prevent**
          **Duplicative Discovery and Motion Practice, and Avoid**
13        **Inconsistent Decisions.**

14        In *Rendon v. City of Fresno*, 2006 U.S. Dist. LEXIS 41140

15   (E.D. Cal. 2006) the court faced the issue of consolidating three

16   separate lawsuits filed against the City of Fresno.  In *Rendon,*

17   Plaintiffs moved to consolidate the three actions alleging a

18   pattern and practice of excessive force in violation of

19   Plaintiffs' Fourth Amendment rights.  *Id.* at 17.  The court

20   determined that consolidating the *Rendon* and *Rodriguez* actions

21

22        [5] Madera also argues against consolidation because they
     claim each Plaintiffs claims would require the testimony of
23   different sets of witnesses and experts for each Plaintiff,
     amounting to a total of seventy five different individuals
24   testifying in one consolidated trial.  Madera, however, fails to
     specify why so many witnesses and experts would be necessary and
25   not redundant.  Even if the trial involved seventy five
     witnesses, there is no indication that the testimony from each
26   witness would not be redundant or that, in consolidating the
     trials, the number of witnesses could not be narrowed or that the
27   jury would not be able to keep separate the testimony as to each
     plaintiff.
28

would avoid serious duplication of effort in two separate trials. *Id.* at 20.  Relying on *Zacky Farms v. FMC Corp.*, 2001 U.S. Dist. LEXIS 24255 (E.D. Cal. 2001),[6] the court held that the *Rendon* and *Rodriguez* actions were not so different or so highly complex from each other that consolidation would overburden the parties to participate in extensive evidence of each others' claims. *Rendon,* 2006 U.S. Dist. LEXIS at 20.  The court reasoned that the *Rendon* and *Rodriguez* involved the same claims, the same underlying incident, the same defendants, and the same core issues.  *Id.*  Further, both cases were at similar procedural pretrial stages, had been consolidated for discovery purposes, and had the same trial date.  *Id.*  However, the court denied consolidation of the third case, *Martinez v. City of Fresno*, because it was at a significantly different procedural stage than

_____

[6] In *Zacky Farms* the Court declined to consolidate an environmental contribution action ("The FMC Action") with an environmental cost recovery action ("The Zacky Action").  *Zacky Farms v. FMC Corp.,* 2001 U.S. Dist. Lexis 24255, 3-4 (E.D. Cal. 2001).  Since both actions were highly complex and a consolidated trial would force the parties to participate in extensive evidence of the other parties' claims that were not pertinent, consolidation would disserve party and judicial economy.  *Id.* at 15.  The Court found that while commonalities existed between both actions, each action involved different uses and owners of the contaminated sites as well as different contaminants at different sites.  *Id.*  The strongest ground against consolidation was the significant procedural differences between the FMC and Zacky actions.  *Id.*  The FMC action had been actively prepared for litigation for two years.  *Id.* at 16.  The FMC action was ready for trial.  *Id.* at 15.  Consolidation would delay the FMC action for at least one year based on the Zacky cases complexities, in depth discovery, and additional parties.  *Id.* at 16.  Even though the documents and discovery in the FMC action might assist the Zacky action, significant time would have been required to review the documents and discovery to ascertain what further information was needed.  *Id.*

1   *Rendon* or *Rodriguez.   Id*. at 21-22.   The court reasoned that the

2   difference in advancement of the litigation would substantially

3   delay the *Rendon* and *Rodriguez* trials if *Martinez* were to be

4   consolidated.   *Id.* at 22.   *Martinez* was filed ten months after

5   the *Rendon* action and seven months after the *Rodriguez* action.

6   *Id.   Martinez* was still in its preliminary stages.   *Id.*   Lastly,

7   the court found that there was a real risk of jury confusion in

8   consolidating *Martinez*, with *Rodriguez* and *Rendon*.   *Id.* at 23.

9   The jury would have had to deal with individual claims of six

10  plaintiffs, only two of whom were represented by counsel in cases

11  that were at significantly different procedural stages.   *Id.*

12       Both Defendant Madera and Defendant Anwar rely on *Rendon* to

13  support their arguments that consolidation of the *Allen* and

14  *Scott*, *et al.* actions would result in jury confusion and

15  prejudice to the Defendants.   Both Madera and Anwar argue that

16  each Plaintiffs' claims and allegations concern factually

17  unrelated incidents involving different witnesses unique to each

18  plaintiff.   According to Defendants, this motion involves cases

19  involving different surgeries on different dates.

20       While the surgeries were conducted on different days, they

21  are analogous procedures entailing similar medical conditions.

22  The experts should be the same.   All CDC witnesses on pattern and

23  practice (*Monell*) evidence and reckless disregard of known

24  medical risks will be substantially the same.   The complaints in

25  both the *Allen* and *Scott, et al.* actions allege the exact same

26  legal claims and focus on the same core facts.   The *Allen* and

27  *Scott, et al.* actions are at nearly identical procedural stage.

28  Both actions involve the same counsel.   According to Plaintiffs,

**31**

there is also a potential that more parties may be joined.[7]

Anwar argues that in *Rendon* the court refused to consolidate the *Martinez* case even though it arose from the same incident as *Rendon* and *Rodriguez.* That was because the latter cases were ready for trial, while *Martinez*, was in its early stages. Anwar argues that there is even more cause to deny consolidation in this case because each of the four plaintiffs' causes of action arise out of different surgeries on different dates with different witnesses and with different factual circumstances regarding each plaintiffs' care and treatment. However, Plaintiffs are Prisoners who allege injury from the same surgical procedure, administered at the same hospital, by the same doctor, to treat the same medical conditions in each Plaintiffs. While there are factual differences specific to each Plaintiff, the core factual allegations involving consent and notice to each Plaintiff are the same.

Anwar also argues that there is a high risk for potential jury confusion because each plaintiff alleges nine causes of action and the allegations of those causes of action are not alleged uniformly by all plaintiffs against all defendants. Anwar argues that keeping straight who each cause of action is alleged against and by which plaintiff will be a source of confusion to a jury. The extent to which the risk of prejudice and confusion might attend a consolidated trial may be alleviated by utilizing cautionary instructions to the jury during the trial

---

[7] The CDC letter to Defendant Anwar of which the court has taken judicial notice lists nine inmates who lodged formal complaints against Anwar.

1   and controlling the manner in which Plaintiffs' claims and

2   defenses are submitted to the jury for consolidation. *Hendrix v.*

3   *Raybestos Manhattan, Inc.,* 776 F.2d 1492, 1495 (11th Cir. 1985);

4   James William Moore et al., Moore's Manual: Federal Practice and

5   Procedure, § 20.02 (Matthew Bender ed., 2006). Any potential for

6   prejudice can be alleviated through proper jury instruction.

7       Anwar also argues that the fact that the cases are in the

8   same district court before the same judge alleviates the

9   potential for inconsistent decisions.  In making this argument,

10  however, Anwar does not address the potential for inconsistent

11  verdicts and the potential for claim and issue preclusion as each

12  case progresses.  The risk of inconsistent rulings on the main

13  legal issues is substantial.  Nor should parties sue for "bites

14  of the apple" on pattern and practice issues.

15      Lastly, Anwar argues that little judicial economy would be

16  gained by consolidation because counsel can coordinate party and

17  witness depositions so as to efficiently conduct the discovery

18  process and prevent duplicative motions in the two cases.

19  However, it makes little sense to keep the *Allen* and *Scott*

20  motions separate and require the same Plaintiffs' counsel to

21  twice respond to any pretrial motions or discovery motions that

22  may arise as issues in two cases that involve identical claims.

23      Plaintiffs' motion to consolidate *SCOTT,* et al. v. *HICKMAN*,

24  et al., 1:05-CV-01282-OWW-WMM and *ALLEN v. WOODFORD*, et al.,

25  1:05-CV-01104-OWW-LJO is **GRANTED FOR THE PURPOSES OF DISCOVERY.**[8]

26  ─────────────────

27      [8] CDC Defendants also argue that per *Pan American World*

28  *Airways Inc. v. U.S. Dist. Court for Central Dist. of California,*
    523 F.2d 1073 (9th Cir. 1975.), consolidation may be ordered only

**33**

The decision to consolidate for all purposes is deferred pending development of the case.

### 5.   **MOTIONS TO SEVER**

Fed. R. Civ. P. 21 governs the misjoinder and non-joinder of parties.   The rule states in pertinent part:

> "Misjoinder of parties is not ground for dismissal of an action.   Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action on such terms as are just.   Any claim against a party may be severed and proceeded with separately."

Fed. R. Civ. P. 20(a) permits the joinder of plaintiffs in one action if (1) the plaintiffs assert any right or relief arising out of the same series of transactions or occurrences and (2) there are common questions of law or fact.   *Coughlin v. Rogers,* 130 F.3d 1348, 1350 (9th Cir. 1997).   If the test for permissive joinder is not satisfied, a court in its discretion, may sever the misjoined parties, so long as no substantial right will be prejudiced by the severance.   *Id.*   In such a case the court can generally dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs "against some or all of the present defendants based on the claims or claims attempted to be set forth in the present complaint."   *Id.*   However the purpose of FRCP 20(a) is to address the "broadest possible scope of action

---

if an action is pending before the court for all purposes and that neither the *Allen* or *Scott, et al.* cases are "at issue" or properly pending before the court.   The *Pan Am. World Airways* case's discussion of Rule 42 dealt with the improper use of the rule to attempt to bind and join nonlitigants to the action.   *Id.* at 1081.   That issue is not present before this court.

consistent with fairness to the parties; joinder of claims,
parties and remedies is strongly encouraged." *United Mine Workers
of America v. Gibbs,* 383 U.S. 715, 724 (1966).

    **A.   Plaintiffs Have All Asserted Claims Arising Out of the
        Same Series of Occurrences**

    Defendant Anwar cites *Coughlin* in support of his argument
that the Boyce and Holmes claims do not arise out of the same
transaction or occurrence.  In *Coughlin*, Plaintiffs filed a
complaint against the Immigration and Naturalization Service
("INS") alleging unreasonable delays of adjudicating their
applications in violation of the Administrative Procedures Act
("APA") and the United States Constitution.  *Coughlin*, 130 F.3d
at 1349.  The court reasoned that Plaintiffs failed to satisfy
the first prong of the "same transaction" requirement, which
refers to a similarity in the factual background of a claim.  *Id.*
at 1350.  The basic connection of all claims in *Coughlin* was the
alleged procedural problem of the delay.  *Id.*  However, the court
reasoned that mere allegation of general delay is not enough to
create a common transaction or occurrence.  *Id.*  Each Plaintiff
waited a different length of time in his or her individual case,
suffering a different duration of alleged delay.  *Id.*
Furthermore, the delay was disputed in some instances and varied
from case to case.  *Id.*  Most importantly, there may be numerous
reasons for the alleged delay.  *Id.*  Therefore, the existence of
a common allegation of delay, in and of itself, did not suffice
to create a common transaction or occurrence.  *Id.*  Moreover, the
court reasoned, that Plaintiffs did not allege their claims arose
out of a systematic pattern of events and, therefore, arose from

1  the same transaction or occurrence.  *Id.*  Plaintiffs did not
2  allege a pattern or policy of delay in dealing with all
3  applications and/or petitions by the INS.  *Id.*  Rather,
4  Plaintiffs merely claimed that, in specified instances,
5  applications and petitions had not been addressed in a timely
6  manner.  *Id.*  The court, therefore, reasoned that Plaintiffs'
7  claims were not sufficiently related to constitute the same
8  transaction or occurrence.  *Id.*

9      However, the allegations in this case are different from
10 those in *Coughlin.*  All the factual claims in this case are
11 premised on 42 U.S.C. 1983, under the Eighth and Fourteenth
12 Amendments against Defendants for failure to provide Plaintiffs
13 with adequate medical treatment for their conditions.  Contrary
14 to the allegations of general delay in *Coughlin*, Plaintiff Boyce
15 specifically alleges that she was not given adequate notice of
16 the surgical procedure, Defendants Anwar performed a far more
17 invasive procedure than was necessary, during the procedure and
18 with the help of Madera staff Anwar removed large sections of
19 skin and tissue, including glands, and muscles, from both
20 armpits, and failed to perform a skin graft to restore mobility.
21 As a result, Boyce alleges that she was left with limited
22 flexibility in her arms and limited ability to raise her arms
23 after the surgery.

24     Plaintiff Holmes alleges with specificity a nearly identical
25 experience.  Holmes claims that she was given inadequate notice
26 and believed she would be going through a "minor" procedure.
27 Instead Holmes claims that Anwar performed a more invasive
28 surgery than was necessary and that after the surgery she was

**36**

1   left with limited flexibility in her arms and limited ability to

2   raise her arms.[9]   Unlike the Plaintiffs in *Coughlin* who waited a

3   different duration of time for INS action, here Plaintiffs allege

4   nearly identical experiences as CCWF inmates, who suffered from

5   the same medical conditions and were treated by the same

6   Defendant Doctor at the same Defendant Hospital.[10]   Further,

7   while Boyce and Holmes bring claims against only three Defendants

8   in their individual capacities, Plaintiffs Allen and Scott bring

9   claims against all defendants and do allege a pattern or policy

10  of constitutional deprivation by the Defendants.   Lastly, it is

11  too early in this stage of the litigation to determine the extent

12  to which each of the Plaintiffs specific medical conditions are

13  distinct.

14       Madera also argues that Boyce and Holmes assert causes of

15  action against three defendants in their individual capacities

16  only and that their claims should therefore be severed.   Boyce

17  and Holmes assert claims against Anwar, Madera, and Hogelund in

18  their individual capacities only.   Scott also asserts claims

19  against Anwar, Madera, and Hogelund in their official and

20  individual capacities.   Allen is asserts the same claims against

21  Anwar and Madera in their official and individual capacities.

22  Defendant Hogelund is the only Defendant named in the Boyce and

23  Holmes claims who is not named in the Allen action.   The fact

24

25       [9] The same specific claims are made by Plaintiffs Allen and
    Scott.

26
27       [10] These specific allegations also foreclose Madera's
    argument that the Plaintiffs claims do not arise from the same
    transaction or occurrence because the surgeries occurred on
28  different dates.

that Boyce and Holmes assert causes of action against only three defendants in their individual capacities, who are also named Defendants in Boyce's claims, is insufficient to support Madera's argument to sever.

### B.   Common Questions of Law and Fact Exist Among All Plaintiffs

As discussed above, numerous common questions of law and fact exist among all Plaintiffs.  All Plaintiffs bring identical claims for civil rights violations under 42 U.S.C. 1983 and the Eighth and Fourteenth Amendments.  All Plaintiffs also allege identical state law causes of actions.  All Plaintiffs raise the same core issues of whether Defendants can be held accountable for the alleged civil rights and state law deprivations claimed by the Plaintiffs.  All cases were assigned to the same district court.  In both actions the Plaintiffs must prove the same custom, practice, or policy of deliberate indifference in providing medical health treatment.  This necessarily mandates proof that the alleged violations were not isolated instances. *Young*, 59 F.3d at 1169.

Madera argues that the prejudice to the County will outweigh any benefit to Plaintiffs of joining the claims.  In support of their argument, Madera contends that having all trials heard at the same time will expose the trier of fact to evidence in the Boyce and Holmes lawsuits that may not be related to each other. This could cause juror prejudice against Madera because the jurors could conclude that if Madera was sued in all the actions it is more likely than not that Madera committed the harms alleged.  Madera further argues that there is a risk of jury

38

1   confusion by the volumes of medical records involved in the

2   actions.  Also, Scott is making claims against Defendants that

3   Boyce and Holmes have elected not to make.  According to Madera,

4   the jury will be burdened because they will have to keep all such

5   information separate and apart from each of the three Plaintiffs.

6        It is too early in the litigation to determine whether and

7   to what extent the evidence will prejudice the Defendants.  No

8   answer has been filed in the *Scott et al.* action.  There has been

9   no discovery cut off date set in the action.  The volume of

10  medical records, history, and witnesses will undoubtedly be

11  narrowed during discovery.  Appropriate jury instructions will

12  assist in relieving any threat of jury confusion and in keeping

13  attention focused on the appropriate claims and parties.

14  However, if at a later time, through discovery, the court

15  determines that the joinder of Boyce and Holmes will prejudice

16  the parties, the court may, in its discretion, sever the parties

17  at any time.  Fed. R. Civ. P. 21

18       Defendants Madera and Defendant Anwar's Motions to Sever are

19  **DENIED WITHOUT PREJUDICE SUBJECT TO BEING RENEWED.**  Per agreement

20  by the parties at the hearing on this matter held on December 11,

21  2006 all parties will participate in a conference to determine

22  the appropriate non medical CDC defendants joined in this action.

23  //

24  //

25  //

26  //

27  //

28

**39**

**6.   CONCLUSION**

• Allen's Request for Judicial Notice is **GRANTED.**

• Plaintiffs' Motion to Consolidate is **GRANTED FOR THE PURPOSES OF DISCOVERY, WITHOUT PREJUDICE TO LATER CONSOLIDATIONS FOR ALL PURPOSES.**

• Defendants' Motions to Sever are **DENIED WITHOUT PREJUDICE.**

IT IS SO ORDERED.

**Dated:    December 22, 2006**          /s/ Oliver W. Wanger
dd0l0                                UNITED STATES DISTRICT JUDGE