UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENEA SCOTT, REGINA BOYCE, and JULIE HOLMES,<br><br>           Plaintiff,<br><br>   v.<br><br>SAMPATH SURYADEVARA, M.D.;SHELLY KRUSE, M.D.; MUHAMMAD ANWAR, M.D.; COMMUNITY HOSPITAL, a California Corporation,<br><br>           Defendants. | 1:05-CV-01282 OWW WMW<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART DENYING IN PART PLAINTIFF GENEA SCOTT'S MOTION FOR RECONSIDERATION** |

**1.   INTRODUCTION**

Plaintiff Genea Scott ("Scott") brings this motion for reconsideration of the court's December 20, 2006 order dismissing Defendants Rosanne Campbell, Roderick Hickman, Debra Jacquez, Gwendolyn Mitchell, Richard Rimmer, Sampath Suryadevara, Peter Szekrenyi, Jeanne Woodford, (collectively "non medical Defendants").  (Doc. 51, Order, Filed December 20, 2006.) Plaintiffs make their motion on the grounds that the recent Supreme Court decision in *Jones v. Bock*, 127 S. Ct. 910 (2006) is

1

a new development in the law to warrant reconsideration of the court's order. Defendants oppose the motion.

## 2. **PROCEDURAL BACKGROUND**

On December 20, 2006 the court issued an order dismissing the non medical CDCR Defendants from Plaintiff's complaint. (Doc. 51, Order.) On January 22, 2007 the Supreme Court of the United States issued its ruling in *Jones v. Bock*, 127 S. Ct. 910 (2007). On February 5, 2007 Plaintiff Scott filed a motion for reconsideration. (Doc. 56, Motion for Reconsideration.) On March 23, 2007 Defendants opposed Plaintiff's motion. (Doc. 67, Opposition.) On April 2, 2007, Plaintiff filed her reply. (Doc. 68, Reply.)

## 3. **FACTUAL BACKGROUND**

### A. Background

Scott brings the underlying action against various staff of the Central California Womens' Facility ("CCWF") and the California Department of Corrections and Rehabilitation ("CDCR"), in their official and individual capacities, under 42 U.S.C. § 1983 (2007). (Doc. 17, Second Amended Complaint ("SAC"), Filed July 17, 2006.) While an inmate at CCWF, Scott suffered from a medical condition consisting of boils underneath her arms. Scott was treated for her medical condition by Dr. Muhammad Anwar ("Anwar"). Scott's complaint alleges that Anwar's procedure for the removal of the boils involved improper and hazardous surgical procedures which left her disfigured and that Defendants are collectively responsible for the faulty procedures.

Prior to filing her complaint, Scott filed three 602

administrative appeals relating to her surgeries for removal of the boils. Throughout her 602 grievances, Scott named several CCWF medical staff she alleges were responsible for continuing to refer her and other inmates to Anwar despite knowledge that his medical treatment involved faulty procedures. Scott did not specifically refer to or name any of the non medical CDC Defendants in her 602 grievances. However, Scott did name CCWF as an entity in her grievances and consistently complained of CCWF's "failure to accommodate [sic]... with pain management...[and failed] totally with ever [sic] other issue addressed in [her] 602." (Doc. 68-2, Plaintiff's Reply, Ex. 1 at 9, Filed April 4, 2007.)

The non medical CDC Defendants were dismissed by the December 20, 2006, order based on the Ninth Circuit decision in *Vaden v. Summerhill,* 449 F.3d 1047, n. 3 (9th Cir. 2006). In *Vaden, t*he Ninth Circuit reasoned that because Plaintiff failed to include Defendants in his initial 602 grievance and named them for the first time in the complaint, "it... appeare[d] that he failed to exhaust his remedies as to those defendants." *Id.* at n. 3. However, the Ninth Circuit did not fully resolve the issue, because the Defendants were instead dismissed on the grounds that Plaintiff filed suit while his 602 complaint was still pending, evidencing failure to exhaust. *Id.* at 1051.

Since the decision in *Vaden*, the Supreme Court of the United States has resolved in prisoners' favor, the issue of whether an inmate's failure to name Defendants in a 602 grievance precludes the inmate from later naming them for the first time in a complaint. see, *Jones v. Bock,* 127 S. Ct. 910 (2007). Jones

**3**

specifically held that the prison's grievance requirements not the Prison Litigation Reform Act define whether there is a necessity that all persons who are later sued be named in a grievance.

The 602 grievance form issued by the CDC does not specifically require an inmate to individually name all the parties responsible for the action complained of. The form only asks that the inmate "Describe Problem" and state what the "Action Requested" is.

### B. Non Medical CDCR Defendants

Defendant Roderick Hickman ("Hickman") is the Secretary of the CDCR, and is sued herein in his individual capacity.

Defendant Jeanne Woodford ("Woodford") is the Director of CDCR and is sued in her individual capacity.

Defendant Richard Rimmer ("Rimmer") is the Acting Director of the CDCR and is sued in his individual capacity.

Defendant Rosanne Campbell ("Campbell") is the Deputy Director of Health Care Services at CDCR and is sued in her individual capacity.

Defendant Peter Szekrenyi ("Szekrenyi") is the Director of Correctional Health Care Services at CDCR and is sued in his individual capacity.

Defendant Debra Jacquez ("Jacquez") is the acting Warden of the Central California Women's Facility ("CCWF") and is sued in her individual capacity.

Defendant Gwendolyn Mitchell ("Mitchell") is the Warden of CCWF and is sued in her individual capacity.

Defendant Sampath Suryadevara, M.D. ("Suryadevara") is the

**4**

Chief Medical Officer of CCWF and is sued in his individual capacity.

Scott alleges that the non medical CDCR Defendants are all responsible for her care and the medical treatment of inmates in the California prison system, as well as that of other inmates who were similarly harmed by Dr. Anwar.  Scott alleges that Defendants each had the ability to terminate Anwar's contract with the State, yet continued to allow Anwar to operate on CCWF inmates.  Scott claims that the non medical CDCR Defendants allowed this treatment to continue even though they had knowledge of Anwar's history of performing disfiguring surgeries on CCWF inmates that were not medically necessary.  (Doc. 1, Second Amended Complaint, ¶4-¶12, Filed July 17, 2006.)

## 4.  **STANDARD OF REVIEW**

A court's power to reconsider an interlocutory order is recognized by Fed. R. Civ. P. 54(b) (2007) which states that an "order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."  A motion for reconsideration is appropriate where the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, (3) if there was an intervening change in controlling law. *See, School District No. 1j, Multnomah County v. Acands, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).  A reconsideration motion should not merely present arguments previously raised, or which could have been raised in the initial summary judgment motion. *See Backlund v. Barnhart,* 778 1386, 1388 (9th Cir. 1985).  ("The motion was

properly denied here because . . . it presented no arguments that had not already been raised in opposition to summary judgment."); *United States v. Navarro*, 972 F. Supp. 1296, 1299 (E.D. Cal. 1997)[1] ("[M]otions to reconsider are not vehicles permitting the unsuccessful party to "rehash" arguments previously presented... Nor is a motion to reconsider justified on the basis of new evidence which could have been discovered prior to the court's ruling....Finally, "after thoughts" or "shifting of ground" do not constitute an appropriate basis for reconsideration.").

### 5.  DISCUSSION

**A.  Motion for Reconsideration**

Scott moves for reconsideration of the December 20, 2006 order on the ground that there has been an intervening change in controlling law.  The non medical defendants were dismissed because Scott failed to name them in her 602 administrative grievance.  (Doc. 51, Order Granting in Part Denying in Part Motions to Dismiss, Filed December 20, 2006.)  The court relied primarily on *Vaden v. Summerhill,* 449 F.3d 1047, 1049 n. 3 (9th Cir. 2006) where the Ninth Circuit reasoned that because Plaintiff failed to include Defendants in his initial 602 grievance and named them for the first time in the complaint, "it... appeare[d] that he failed to exhaust his remedies as to those defendants." *Id.* at n. 3.  However, the Ninth Circuit instead, dismissed the Defendants on the grounds that Plaintiff

---

[1] The underlying decision on the merits, *United States v. Navarro*, 959 F. Supp. 1253 (E.D. Cal. 1997), was reversed by *United States v. Navarro*, 160 F.3d 1254 (9th Cir. 1998), *cert. denied* 119 S. Ct. 2354, 144 L. Ed. 2d 249 (1999).  This reversal did not affect the district court's denial of reconsideration.

**6**

filed suit while his 602 complaint was still pending. *Id.* at 1051.

Since the decision in *Vaden*, the Supreme Court of the United States issued its opinion in *Jones v. Bock,* 127 S. Ct. 910 (2007) where it resolved the issue of whether an inmate's failure to name Defendants in a 602 grievance precludes the inmate from later naming them for the first time in a complaint. In *Jones*, the Sixth Circuit dismissed two separate lawsuits because the inmate Plaintiffs in each suit had not identified each defendant in their initial grievance. *Id.* at 922. The Court reasoned that "the [Prison Litigation Reform Act] requires exhaustion of 'such administrative remedies as are available...' but nothing in the statute imposes a 'name all defendants' requirement along the lines of the Sixth Circuit's judicially created rule." *Id.* In the Sixth Circuit, the "name all defendants" rule applied even when the identity of the responsible party was not discovered until a later step of the grievance process. *Id.* n. 7. Under the Sixth Circuit rule, the prisoner had to bring a new grievance upon learning the identity of the responsible party, in order to properly exhaust. *Id.* However, in addressing the issue, the Court reasoned that nothing in the Michigan Department of Corrections Policy ("MDOC") itself "supported the conclusion that the grievance process was improperly invoked simply because the individual later named as a defendant was not named as the first step of the grievance process. *Id.* at 922. The PLRA does not impose such a requirement. *Id.* "The Sixth Circuit rule may promote early notice to those who might later be sued, but that has not been thought to be one of the leading purposes of the

**7**

exhaustion requirement." *Id.* at 923. "Exhaustion is not per se inadequate simply because an individual later sued was not named in the grievance." *Id.*

### i. Non Medical Staff at CCWF

The first issue is whether, under *Jones*, non medical Defendants at CCWF[2] were sufficiently on notice of Scott's complaints even though she did not specifically name these Defendants in her 602 grievance. Defendants argue that the holding in *Jones* does not affect this court's December 20, 2006 Order because Scott made no grievance or other administrative charge against any non medical CDCR Defendant. Even if Scott did not name the non medical CDCR Defendants, Defendants argue Scott still failed to exhaust her administrative remedies by failing to implicate non medical CDCR Defendants in any way in her 602 grievance. However, "Compliance with the prison grievance procedures, is all that is required by the PLRA to 'properly exhaust'." *Jones,* 127 S. Ct. at 922-923. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. *Id.* at 923.

In this case, the only detail requested by the CDCR 602 grievance form is that the inmate "Describe Problem" and state what the "Action Requested" is. The 602 grievance form issued by the CDCR does not specifically require an inmate to individually

---

[2] Non Medical CCWF Defendants are Defendants Suryadevara, Mitchell, and Jacquez.

**8**

name all the parties responsible for the action complained of. Scott brings a claim for violations of her Eighth and Fourteenth Amendment claims under 42 U.S.C. § 1983. Prior to filing her complaint and in accordance with the PLRA, Scott filed several 602 grievances. In her grievances Scott described the location of the boil, the two surgeries to remove the boil, the medications she was prescribed, and the fact that none of this treatment did anything to cure her problem. She provided the prison with dates of the surgeries and the times she met with various doctors. She described a prior grievance and how, though her grievance was granted, she received a second surgery. She described how her boil remained in spite of this second surgery. She explained in detail the pain she was in, the scarring that resulted from the surgery, and the numbness and loss of movement in her arm. Further, she specifically states that "due to complete incompatin [sic] of the Doctor who was a contract doctor for CCWF... I have been in extreme pain and now grant the fact that CCWF has tryed [sic] to accamodate [sic] me with pain management, they have failed totally with ever [sic] other issue addressed in my 602."

Further, Plaintiffs have presented evidence since the April 16, 2007 hearing on this matter that non medical staff at CCWF was in fact aware of Plaintiffs' grievances against Dr. Anwar. Plaintiffs allege that Defendant Suryadevara was repeatedly warned about Dr. Anwar's misconduct and offer the rough deposition transcript of CDCR employee Randy Lewis, R.N in support of their allegations. (Doc. 74, Notice of New Facts, Filed May 18, 2007.) Plaintiffs argue the following:

**9**

1. That Mr. Lewis testified that in mid-March 2004 he notified Suryadevara that Dr. Anwar "threatened" and attempted to bribe him in an effort to coerce Lewis to stop questioning his medical bills. (Doc. 74, Notice of New Facts, Ex. A, Lewis Depo., 113:1-17; 61:2-64-3.)

2. That in September 2004 Lewis sent a letter to Suryadevara stating that Anwar was performing unauthorized medical treatments on CDCR inmates. (*Id.* 69:7-70:20.)

3. Throughout the next several months, Lewis repeatedly advised Suryadevara about Anwar's patient care issues, performance of unauthorized medical procedures, invented medical procedures, and inaccurate patient chart notations. (*Id.* at 66:13-67:19; 68:4-20; 69:7-16; 74:20-76:21; 80:13-82:11; 89:21-93:11; 103:6-104:17; 111:24-112:10; 115:9-116:8; 141:10-142:16.)

4. Finally in March 2005, Lewis memorialized the concerns he had verbally presented to Suryadevara in a written memorandum entitled "Concerns regarding service of Dr. Anwar M.D." That memo concluded that "Dr. Anwar has demonstrated his willingness to threaten and intimidate employees for personal gain, but more troublesome is his willingness to skew medical records to accomplish this, for possible increased reimbursement of his services." (*Id.* at 98:22-99:9).

1    Plaintiffs allege that despite these repeated warnings,
2 Suryadevara allowed Anwar to engage in debilitating surgeries on
3 Plaintiffs Holmes and Scott in May and July 2005.  Pursuant to
4 Fed. R. Civ. P. 11(b) such facts  will be taken as true subject
5 to a dispositive motion.
6    Defendants Jacquez, Mitchell, and Suryadevara (collectively
7 "non medical CCWF Defendants") are all employed at the CCWF
8 prison.  Scott's several 602 grievances specifically identify her
9 dissatisfaction with the prison's treatment of her medical
10 condition, alleges injuries that resulted from that treatment,
11 and establishes a record of her consistent complaints as an
12 inmate of CCWF.  These details in Scott's 602 grievances are
13 sufficient to have put them on notice and allow the "prison to
14 address complaints about the program it administer[ed] before
15 being subjected to suit."  *Jones*, 127 S. Ct. at 923.  Further,
16 since there is no evidence that the CDCR procedures or the 602
17 grievance form make any mention of naming particular officials in
18 the grievance a rule imposing such an exhaustion prerequisite is
19 now unwarranted under *Jones*.  *see, Id.*  The Court in *Jones*
20 identified the benefits of exhaustion to include allowing a
21 prison to address complaints about the program it administers
22 before being subjected to suit, reducing litigation to the extent
23 complaints are satisfactorily resolved, and improving litigation
24 that does occur by leading to the preparation of a useful record.
25 *Id.*  Under *Jones,* Scott has sufficiently exhausted her remedies
26 under the PLRA against Defendants Jacquez, Mitchell, and
27 Suryadevara.
28    Defendants cite several cases that are distinguishable from

**11**

Scott's case. In *Davis v. Knowles*, 2007 U.S. Dist. LEXIS 6159 (E.D. January 25, 2007) the Plaintiff merely stated that he was being denied medical treatment for a broken middle finger. *Id.* at *6. The court reasoned that the Plaintiff's grievance was so minimal, it failed to bring the actions forming the basis of his lawsuit to the attention of the correction officials. *Id.* at *7-*8. According to the court, "had the Plaintiff grieved the fact that he was denied access to an orthopedic specialist... and that he had been transferred to another prison, resulting in the denial of medical care, administrative remedies might have been exhausted." *Id.* at *8. In contrast, Scott's complaints are specific and go beyond a description of her medical condition. Scott's grievance complained of dissatisfaction with the prison's treatment of her medical condition, alleged disregard by CCWF of Anwar's continued faulty treatment of this medical condition, and the injuries that she suffered as a result.

In *Mitchell v. Villa*, 2007 U.S. Dist. LEXIS 16358 (S.D. Cal. 2007), the court ruled that Plaintiff's failure to include in his 602 grievance any allegations of retaliation by prison officials in violation of his First Amendment rights, as raised in his complaint, resulted in Plaintiff's failure to exhaust. *Id.* at *14. Here, Scott brings an action under 42 U.S.C. § 1983 for violation of her Eighth Amendment rights. In her 602 complaints she consistently complained of her medical condition, pain, and alleged negligence by Anwar in treating her condition. She sought relief from the CDCR on more than one occasion, putting CCWF officials on notice as to her medical condition and the

**12**

alleged incompetent medical treatment by Anwar.[3] This case is different from *Mitchell* where Plaintiff alleged First Amendment violations in his complaint but did not complain of any behavior in his grievance that would amount to a First Amendment violation.

Plaintiffs' Motion for Reconsideration as to Defendants Jacquez, Mitchell, and Suryadevara is **GRANTED**

### ii. Non Medical Staff at CDCR in Sacramento

In *Johnson v. Shawnego*, 2007 U.S. Dist. LEXIS 9998 (E.D. Cal. 2007) on review of Judge O'Neill's dismissal of Plaintiff's claim, this court concluded that Plaintiff's complete failure to set forth any misconduct by Defendant Cortez resulted in Plaintiff's failure to exhaust his administrative remedies. *Id.* at *7. In *Johnson*, Judge O'Neill reviewed plaintiff's inmate appeal in its entirety and ultimately found that defendants were entitled to dismissal from the action because plaintiff's inmate appeal did not grieve the claims against them. *Id.* at *5. A prisoner's appeal must place prison officials on notice as to the misconduct complained of. *Id.* at *7. In considering the entire record, which included the contents of the appeal and the prison officials' response to the appeal, Judge O'Niell's dismissal was affirmed upon a finding that plaintiff inmate failed to place defendants on notice of his grievance in any way. *see, Id.*

---

[3] There is evidence of other inmates who also filed 602 grievances with CDCR relating to Anwar's treatment of their boils. Scott's complaints, along with the grievances of other inmates, supports Scott's contentions that CDCR had knowledge of Anwar's faulty procedures and continued to refer inmates to him despite this knowledge.

**13**

1    In this case, Plaintiffs have likewise failed to place
2 Defendants Hickman, Woodford, Rimmer, Campbell, and Szekrenyi
3 (collectively "CDCR Defendants") on notice of their grievances
4 against Dr. Anwar.  Hickman ("Hickman") is the Secretary of CDCR
5 in Sacramento.  Woodford is the Director of CDCR in Sacramento.
6 Rimmer is the Acting Director of the CDCR  and Campbell is the
7 Deputy Director of Health Care Services at CDCR.  Lastly,
8 Szekrenyi is the Director of Correctional Health Care Services at
9 CDCR in Sacramento.  Further, while Scott does mention CCWF as
10 and entity in her 602 grievances, she in no way mentioned CDCR or
11 any higher ranking medical or executive officials.

12    Plaintiffs do not make allegations that the non medical CDCR
13 Defendants were given an opportunity to investigate their claim.
14 Plaintiff's do not allege these Defendants, who work in
15 Sacramento, had any notice or awareness of Dr. Anwar or of his
16 faulty surgery of Plaintiffs at CCWF in Chowchilla, CA.  While it
17 is not necessary that Plaintiff Scott specifically name non
18 medical CDCR defendants in her complaint, it is necessary that
19 she show Defendants had an opportunity to address her complaints
20 about before being subjected to suit.  *see, Jones*, 127 S. Ct. at
21 923.  Plaintiffs have failed to meet this burden.

22    Motion for Reconsideration as to non medical CDCR Defendants
23 Hickman, Woodford, Rimmer, Campbell, and Szekrenyi is **DENIED.**

### 6.   CONCLUSION

25    Scott's Motion for Reconsideration as to Jacquez, Mitchell,
26 and Suryadevara is **GRANTED.**

27    Scott's Motion for Reconsideration as to Defendants Hickman,
28 Woodford, Rimmer, Campbell, and Szekrenyi is **DENIED.**

Scott has sought leave to file a third amended complaint which reinstates the non medical CDCR Defendants in this lawsuit. Leave to file a third amended complaint is **GRANTED** in accordance with this decision.

IT IS SO ORDERED.

**Dated:   July 5, 2007**           /s/ Oliver W. Wanger
                                    UNITED STATES DISTRICT JUDGE